In re the MARRIAGE OF William D. PRESTON, Appellant–Respondent,

and

Cathy Jo Preston, Appellee–Petitioner.

No. 85A04–9801–CV–19.

Court of Appeals of Indiana.

Jan. 29, 1999.

---

7. Both statutes provide for attorney's fees. *See* Ind.Code §§ 13–23–13–8(b) and 13–30–3–13(d)(2).

David W. Stone IV, Stone Law Office, Anderson, Mark C. Guenin, Johnson, Lehman and Guenin, Wabash, for Appellant–Respondent.

Jane L. Kauffman, Lemon, Armey, Hearn & Leininger, Warsaw, for Appellee–Petitioner.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

William D. Preston appeals from the trial court's division of his retirement plan in the decree that dissolved his second marriage to Cathy Jo Preston. William raises various issues which we consolidate and restate as:

1. Whether the trial court erred when it concluded that William's retirement plan is marital property subject to division.

2. Whether the trial court misapplied the law when it divided William's retirement plan benefits using a "coverture fraction" formula which included the combined length of the couple's two marriages.

3. Whether the method the trial court used to distribute Cathy's share of William's

retirement plan constitutes an abuse of discretion.

We affirm in part, reverse in part and remand.

## FACTS AND PROCEDURAL HISTORY

William and Cathy married for the first time in July of 1967. They had two children, and Cathy was a homemaker for most of the marriage. William was a teacher for ten years before he became an independent agent for Farm Bureau Insurance Company ("Farm Bureau") in January of 1975. The parties entered into a property settlement agreement that was incorporated and merged into a dissolution decree dated March 30, 1993. Under the decree, William was awarded "[a]ny pension benefits, or retirement benefits through his past, present, or future . . . employment with Farm Bureau Insurance."

The parties continued their relationship after the divorce, and they re-married on December 15, 1993. Less than three years later, on June 3, 1996, Cathy filed a petition for dissolution of marriage. On September 25, 1997, the trial court entered its decree, with requested findings and conclusions, and dissolved the couple's second marriage. The marital assets in the second dissolution were essentially the same as those in the first dissolution. The court ordered an equal division of the marital property.

The trial court found that William's retirement plan was a divisible asset and included the entire plan in the marital estate. The court also determined that under the 1993 property settlement agreement and decree the parties had "erroneously concluded that the pension was not divisible." Thus, the court considered the retirement plan "anew" and awarded each party a one-half interest in the plan. William appeals from that award.

## DISCUSSION AND DECISION

### Standard of Review

 In this case, the trial court entered findings and conclusions pursuant to Indiana Trial Rule 52(A). We will not set aside the findings or judgment unless clearly erroneous. *Id.* Findings are clearly erroneous

when the record contains no facts to support them either directly or by inference. *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind.1996). The judgment is clearly erroneous if (i) the findings do not support the conclusions of law or (ii) the conclusions of law do not support the judgment. *Id.*

 When reviewing a claim that the trial court improperly divided marital property, we consider only the evidence most favorable to the trial court's disposition of the property, and we decide whether the trial court's decision constitutes an abuse of discretion. *Hodowal v. Hodowal*, 627 N.E.2d 869, 871 (Ind.Ct.App.1994), *trans. denied.* An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* An abuse of discretion also occurs when the trial court misinterprets the law or disregards evidence of factors listed in the controlling statute. *Id.*

### Issue One: Retirement Plan as Marital Property

William first contends that the trial court erred when it included his retirement plan in the marital estate. Specifically, William challenges the following finding:

> Testimony and exhibits regarding the Farm Bureau pension indicated that if [William] would now retire, he would be entitled to early retirement benefits under the agreement with Farm Bureau. Although the amount to be paid by the retirement plan could vary significantly, [William's] benefits could not now be forfeited upon termination of his employment [footnote omitted]. The pension plan is therefore a divisible asset.

 The dissolution court is required to divide all the property of the parties "whether owned by either spouse prior to the marriage, acquired by either spouse in his or her own right after the marriage and prior to final separation of the parties, or acquired by their joint efforts, in a just and reasonable manner." IND.CODE § 31-1-11.5-11(b).[1]

---

1. Statutes are cited as they were codified at the time the dissolution petition was filed.

Our court has recently reiterated the well-established rule that, in order for a pension or retirement plan to be included in the marital estate, it must be vested. *Dowden v. Allman,* 696 N.E.2d 456, 458 (Ind.Ct.App. 1998). The word "vest" generally means either vesting in possession or vesting in interest. *Brown v. American Fletcher Nat'l Bank,* 519 N.E.2d 166, 168 (Ind.Ct.App.1988), *trans. denied.* Vesting in possession connotes an immediate existing right of present enjoyment, while vesting in interest implies a presently fixed right to future enjoyment. *Id.* Vested pension rights have been described as "intangible assets of a spouse which have been earned during the marriage, either through the contributions of the spouse which otherwise would have been available as assets during the marriage, or through contributions of the employer which constitute deferred compensation." HOMER H. CLARK, JR., 2 THE LAW OF DOMESTIC RELATIONS IN THE UNITED STATES § 16.6, at 208 (2d ed.1987).

The dissolution statutes have codified these concepts, specifically defining "property" as all the assets of either party or both parties, including:

(1) a present right to withdraw pension or retirement benefits;

(2) the right to receive pension or retirement benefits that are *not forfeited upon termination of employment,* or that are vested, as that term is defined in Section 411 of the Internal Revenue Code [26 U.S.C. § 411], but that are payable after the dissolution of marriage; and

(3) the right to receive disposable retired or retainer pay, as defined in 10 U.S.C. 1408(a), acquired during the marriage, that

is or may be payable after the dissolution of marriage.

IND.CODE § 31–1–11.5–2(d) (emphasis added).

Here, William was enrolled under the "Farm Bureau Retirement Program for Contracted Agents."[2] An agent's retirement benefits under the program consist of a monthly annuity for life, the amount of which depends upon length of credited service, average compensation, including commissions and bonuses, and age at retirement. The program is financed entirely by Farm Bureau, and benefits are considered a form of "deferred bonus commissions." Normal retirement age under the program is sixty-five; however, an agent who attains the age of fifty-five and has ten years of credited service may select an early retirement option. An agent with ten years of credited service qualifies for "deferred vested" retirement, that is, an agent's benefits are vested but "deferred" until the agent is eligible for retirement, and the agent actually retires.

William's retirement benefits had vested before the second marriage. At the time of dissolution, he was fifty-six years old and had been a Farm Bureau agent for twenty-two years. Because William had reached early retirement age, he was eligible to receive benefits immediately upon retirement.[3] Further, William had completed the required ten years of credited service; thus, his right to receive benefits was "not forfeitable upon termination" of his contract pursuant to Indiana Code § 31–1–11.5–2(d)(2). In a similar case, this court held that an early retirement benefit which, at the time of dissolution, the husband had a right to receive and which would not be forfeited upon termi-

2. As a "contracted agent," William was not eligible to participate in Farm Bureau employee pension plans. In support of his argument that his benefits were not "vested," William directs us to the testimony of Susan Porter, corporate counsel for Farm Bureau, who explained that William's plan was not "vested" under Internal Revenue Code § 411. *See* IND.CODE § 31–1–11.5–2(d)(2). Section 411 establishes the vesting requirements for pensions governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). HOMER H. CLARK, JR., 2 THE LAW OF DOMESTIC RELATIONS IN THE UNITED STATES § 16.6, at 207 n. 25 (2d ed.1987). William's retirement plan was not an ERISA qualified plan. However, the trial court did not find William's benefits "vested, as that

term is defined in Section 411," and we need not analyze that statutory provision. The court did find William's benefits are not "forfeited upon termination of his employment." William's benefits are based upon services rendered to Farm Bureau, and "employment" as used in the statute includes William's services as an agent.

3. The supreme court has interpreted "a present right to withdraw pension or retirement benefits" under Indiana Code § 31–1–11.5–2(d)(1) to mean that the earning spouse has an immediate right to receive retirement benefits and has actually retired. *In re Marriage of Adams,* 535 N.E.2d 124, 126 (Ind.1989).

nation of his employment was marital property. *Hughes v. Hughes*, 601 N.E.2d 381 (Ind.Ct.App.1992), *trans. denied.* As in *Hughes,* William's retirement plan is marital property as defined by the Dissolution of Marriage Act.

■ Still, William complains that his actual future benefits are contingent upon his retirement date and his "average monthly compensation"[4] and contends essentially that his interest is too speculative to be deemed a marital asset. These contingencies, however, do not alter the status of the retirement plan as divisible marital property. The fact that the actual amount of future benefits has not yet been determined does not, in itself, prevent the interest from constituting property under subsection 2(d)(2). *See Tirmenstein v. Tirmenstein,* 539 N.E.2d 990, 991 (Ind.Ct. App.1989) (police pension was marital property where amount of future benefits depended upon number of years before earning spouse retired and future base salary of first class patrolman).[5]

■ In a separate argument, William emphasizes that the trial court adopted the property settlement agreement and awarded him his retirement plan in the first dissolution decree. Thus, he claims that the portion of the plan that accrued before his second marriage should be excluded from the marital estate. We rejected a similar argument in *Huber v. Huber,* 586 N.E.2d 887 (Ind.Ct. App.1992), *trans. denied,* where the parties divorced after a twenty-year marriage, remarried six months later, and separated after another ten years together. The husband argued that the second marital estate should consist of only those assets which he desired to commingle upon remarriage and those acquired during the second marriage. *Id.* at 889. We observed that our definition of

property is broad, providing that all assets, including various pension interests, are considered marital property. *Id.* Absent a valid antenuptial agreement, a spouse may not select which of the parties' assets are to be considered marital assets. *Id.*

Although William's retirement plan became his separate property under the first dissolution decree, he remarried without an antenuptial agreement. Consequently, in this second dissolution, his entire retirement plan was once again marital property subject to an equitable division. The trial court properly included the plan in the marital estate.

### Issue Two: "Coverture Fraction" Formula

■ William next asserts that the trial court misapplied the law when it divided his retirement plan benefits based upon the combined length of the couple's two marriages. With respect to this issue, the trial court entered the following finding:

> The Court believes that it must acknowledge the prior decree dissolving the marriage of the parties. The decree has not been set aside. Further, Cathy has accepted certain benefits under the decree, including the maintenance paid before the second marriage, the health insurance provided by [William], payments against her prior auto, and [William's] continued payment of [a son's] college education. However, *the Court also believes that each of the parties erroneously concluded that the pension was not divisible under the prior decree, and the Court believes that it may be fairly considered anew as a part of this proceeding.*

The court then used a "coverture fraction" formula[6] to determine the value of what it

---

**4.** "Average monthly compensation" is based upon commissions and bonuses paid during "the five consecutive calendar years within the last 10 completed calendar years that yield the highest average...."

**5.** William also points out that Farm Bureau could terminate the program completely, and he argues he should not be required to bear that risk. The evidence does not support a determination that this inherent risk sufficiently reduced William's interest in his retirement plan to compel exclusion of the asset from the marital estate.

**6.** The "coverture fraction" formula is one method a trial court may use to distribute pension or retirement plan benefits to the earning and non-earning spouses. Under this methodology, the value of the retirement plan is multiplied by a fraction, the numerator of which is the period of time during which the marriage existed (while pension rights were accruing) and the denominator is the total period of time during which pension rights accrued. CLARK, *supra,* § 16.6, at 211; *see, e.g., Tirmenstein,* 539 N.E.2d at 991.

termed the "marital portion" of the asset, that is, the portion attributed to the marriage. In particular, the court found:

> Marital Portion: An amount accumulated by [William] under the terms of the Retirement Plan at the time of the [final separation, June 3, 1996], multiplied by a fraction, the numerator of which is the Number of Years of Marriage during which benefits were accumulated prior to [June 3, 1996] and the denominator of which is the total number of years during which benefits were accumulated prior to [June 3, 1996].

The court defined the "Number of Years of Marriage" as the period from July of 1967, the date of the parties' first marriage, to June of 1996, the date of the parties' final separation in the second marriage. Accordingly, the numerator of the coverture fraction included both marriages and the interval between them within the period of coverture. Under the formula utilized, the "Marital Portion" contained the total value of the plan earned during both marriages. The court then divided the marital property equally, including the entire retirement plan. As such, William maintains the court improperly divided the retirement plan as if the parties had one continuous thirty-year marriage.

■ It is undisputed that the trial court awarded the retirement plan to William in the first dissolution decree. That order was not appealed and became final in 1993. *See* IND.CODE § 31–1–11.5–9. The parties' remarriage has no effect on the binding nature of that decree.[7] In its findings, the trial court acknowledged that the first decree had not been set aside. Nevertheless, the court found that the parties had erred when they concluded that the pension was not divisible under the prior decree and sought to correct that error by considering disposition of the retirement plan "anew."

The second petition for dissolution filed on June 3, 1996, does not relate back to and incorporate the first marriage, and the trial court could not modify or revoke the first decree absent fraud, duress or undue influence. *See Dusenberry v. Dusenberry,* 625 N.E.2d 458, 463 (Ind.Ct.App.1993) (citing IND.CODE § 31–1–11.5–10(c); IND.CODE § 31–1–11.5–17(b)); *see also Brownsing v. Brownsing,* 512 N.E.2d 878, 880 (Ind.Ct.App. 1987) (a court cannot modify a divorce decree through a collateral action), *trans. denied.* The doctrine of *res judicata* precludes litigation of an issue previously adjudicated. *Mutchman v. Consolidation Coal Co.,* 666 N.E.2d 461, 464 (Ind.Ct.App.1996), *trans. denied.* Accordingly, any rights Cathy may have had in William's retirement plan arising from the first marriage were merged and extinguished in the first dissolution decree, which was a final judgment on that issue.

■ In determining what is a just and reasonable distribution of the marital estate, the trial court examines evidence regarding the contribution of each spouse to the acquisition of the asset. *See* IND.CODE § 31–1–11.5–11(c)(1). In doing so, however, the court must consider only the evidence related to the marriage at issue, not to a previous marriage, even if the previous marriage was between the same parties. Where, as here, the court elects to utilize a coverture fraction formula in making its determination, the numerator of the fraction must be based upon the current marriage.

■ The first decree returned the parties to the status of unmarried persons. The remarriage was not the continuation of a previous marriage but an entirely new marriage with respect to marital property. We hold that the court erred when it utilized a formula that included the combined length of the couple's two marriages, thus treating

---

7. Both parties cite cases which involved pension plans in the context of a second dissolution between the same parties, but neither case is on point. *See Breeden v. Breeden,* 678 N.E.2d 423 (Ind.Ct.App.1997); *Huber,* 586 N.E.2d 887. In *Breeden,* the parties divorced and remarried the next year. The record was silent regarding disposition of the husband's pension plan in the first decree. In the second dissolution, the trial court awarded the husband the amount of his pension plan accumulated prior to the second marriage.

That decision was not challenged on appeal. *Id.* at 424–25. In *Huber,* 586 N.E.2d 887, the husband's pension was not mentioned in the first dissolution decree. In an interlocutory appeal, we held that the husband's entire pension was before the dissolution court in the second dissolution, but that either party could offer evidence concerning whether an equal division of the entire pension value would be reasonable. *See id.* at 889.

William's retirement plan benefits as if they had been earned during a single, continuous marriage. Upon remand, the trial court may only consider the facts and circumstances related to·the second marriage when dividing the plan.

### Issue Three: Method of Distribution

In a final argument, William challenges the method used by the trial court to distribute Cathy's share of William's retirement benefits. The trial court ordered that "Cathy's share of the Marital Portion of the plan shall be determined in accordance with the type of benefits available and shall be calculated and distributed to her" according to the following:

1. To the extent that the disbursement of benefits to [William] can only be made on a monthly or other regular periodic basis, then Cathy shall be entitled to receive an amount equal to one-half (½) of the Marital Portion of each such monthly or other periodic payment.

2. If the benefits to [William] can be distributed in a lump sum distribution, then Cathy's share shall be equal to the lump sum actuarial equivalent of one-half (½) of the Marital Portion determined on the basis of the actuarial assumptions specified under the pension plan.

3. If the plan provides for benefits at the Earliest Retirement Age and these benefits may be elected to be received by a former spouse under the plan; and, if Cathy elects to receive such benefits, then such benefits shall be payable to Cathy on or after the date on which [William] attains (or would have attained) early retirement age, as if [William] had retired or separated from service.

The trial court then ordered Cathy's counsel to prepare a Qualified Domestic Relations Order ("QDRO") "acceptable in form" to the retirement plan. The court further stated that, in the event a particular form of QDRO is required, the parties may petition "for *further modification or entry of an order as is just.*"

William argues that it is unjust to award Cathy a fixed monthly sum based upon his early retirement benefits. He observes that his retirement benefits as ultimately determined will be a function of his compensation during his last ten years of service. Thus, he argues, there is no assurance that if Cathy receives her full share of the asset now, he would in fact receive an equitable share when he retires.

 The trial court has the discretion to divide pension and retirement plans in a "just and reasonable" manner which includes "setting aside to either of the parties a percentage of those payments either by assignment or in kind at the time of receipt." IND.CODE § 31–1–11.5–11(b)(4). In the exercise of its sound discretion, the court may distribute the retirement plan in a manner best suited to the parties' needs and circumstances as long as the distribution is "just and reasonable." In dissolution actions, trial courts face a wide variety of pension and retirement plans, the valuation and distribution of which are often difficult.

 Here, the court fashioned a flexible payout method whereby, if the plan permitted, Cathy could elect to receive a proportionate share of the benefits William would receive if he chose early retirement. The court's order neither requires William to retire early nor requires the plan administrator to distribute early benefits. *Cf. Board of Trustees of Ind. Pub. Employees' Retirement Fund v. Grannan,* 578 N.E.2d 371, 376–77 (Ind.Ct.App.1991), *trans. denied.* On the contrary, the court recognized that the retirement plan administrator is in the best position to determine if the distribution method is authorized and to make the precise calculations as to valuation. The court then retained jurisdiction to modify the QDRO if it did not comply with the requirements of the plan.

Because he was eligible for early retirement, William could retire and receive his share of benefits immediately. If, however, William were to continue working, he would incur the additional risks and enjoy any additional rewards of continued employment, including any corresponding change in the value of his retirement benefits attributable to his work after the marriage. This is an equitable method of distribution.

## CONCLUSION

We affirm that part of the decree which held that William's entire retirement plan is marital property and the method in which the court distributed Cathy's share of the retirement benefits. We hold, however, that the trial court abused its discretion when it included the years of the first marriage in the numerator of the coverture fraction used to calculate an equitable division of the benefits. Upon remand, when dividing the plan in a just and reasonable manner, the trial court may only consider the facts and circumstances related to the second marriage. Among the factors to be considered are the extent to which the value of the plan was acquired by William before the second marriage and the duration of that marriage.

Affirmed in part, reversed in part and remanded.

FRIEDLANDER, J., and MATTINGLY, J., concur.