Kent Sterrett **LLOYD** III, Appellant–Respondent,

v.

Tammy A. **LLOYD**, Appellee–Petitioner.

No. 10A05–0103–CV–132.

Court of Appeals of Indiana.

Oct. 3, 2001.

Russell T. Clarke, Jr., Emswiller, Williams, Noland & Clarke, Indianapolis, IN, Attorney for Appellant.

Wm. Dennis Sims, Louisville, KY, Attorney for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Kent Sterrett Lloyd III (Sterrett) appeals from the trial court's final order

dissolving his marriage to Tammy A. Lloyd (Tammy).

We affirm and remand for correction of calculation errors.

## ISSUES

1. Whether the trial court erred by utilizing income averaging to determine Sterrett's weekly gross income for child support purposes.
2. Whether the trial court erred by awarding Tammy rehabilitative maintenance.
3. Whether the trial court erred by including a tractor as marital property and awarding its value to Tammy.

## FACTS

The parties were married in 1987 and have two minor children. Tammy filed a petition for dissolution of the marriage on May 12, 2000. In August 2000, the parties entered into an agreed order and submitted a partial mediation agreement on November 8, 2000. A final hearing on the remaining issues was conducted over the course of two days in November of 2000. The court approved the mediation agreement that settled property issues, with the exception of the tractor. The final order awarded the parties joint custody of the children with primary physical custody in Tammy, required Sterrett to pay child support, set visitation, entered a restraining order against Sterrett, ordered Sterrett to pay Tammy spousal maintenance, and assessed the value and ownership of the tractor.

## DECISION

■ Pursuant to Tammy's request, the trial court entered findings of fact and conclusions of law. Indiana Trial Rule 52(A) prohibits a reviewing court on appeal from setting aside the trial court's judgment "unless clearly erroneous." A court on appeal must give "due regard ... to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). When a trial court has entered findings of fact and conclusions of law, its judgment is clearly erroneous only if (1) its findings of fact do not support its conclusions of law, or (2) its conclusions of law do not support its judgment. *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind.1996). "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Id.*

■ "The trial court does not abuse its discretion if there is sufficient evidence and reasonable inferences therefrom to support the result." *Id.* A trial court's judgment will not be reversed unless it is clearly against the logic and effect of the facts and circumstances before it. *Id.* "A reviewing court will not weigh evidence, but will consider the evidence in a light most favorable to the judgment." *Id.*

### 1. Income Averaging

Sterrett contends that the trial court erred by averaging his income over a three-year period in order to fix his income for the purpose of setting child support payments. "Sterrett argues the use of income averaging in this case is an abuse of discretion because he is not self-employed." Appellant's Brief 9.

Regarding the parties' incomes for child support purposes, the trial court found, in pertinent part:

7. Sterrett is employed at his father's company, Abell Elevator International as President and has been so employed for the vast majority of the marriage.
8. The Court finds that Tammy is currently employed at Country Style

Plaza earning $7.50 per hour, generally 40 hours per week and a $300 gross pay per week. Tammy has had this employment at Country Style Plaza since August, 2000 when the parties' children enrolled in school [in] the fall of this year.

9. The Court finds that since 1995 Tammy has not worked outside the home except for some work with Abell Elevator and has been responsible for the homemaking responsibilities and the child care responsibilities.

\* \* \* \* \* \*

13. In determining the child support obligation of each parent consistent with the goals of joint legal custody, the Court makes the following observations:

I.C. 31–16–6–1 provides the Court may order either parent or both parents to pay any amount reasonable for child support after considering all relevant factors including (1) the financial resources of the custodial parent, (2) the standard of living the child would have enjoyed if (a) the marriage had not been dissolved; (3) the physical and mental condition of the children involved including their educational needs; and (4) the financial resources and needs of the non-custodial parent.

14. Sterrett's annual gross income should be determined by his W–2 income plus the imputed value of certain benefits that Sterrett receives through his father's company such as reductions of his personal living expenses and use of [a] car.

The Court has determined that Sterrett has the unlimited use of a maintained and insured company vehicle, usually a 1994 Mercedes Benz ...,

which the Court gives an annual benefit value of $4,800, YMCA membership which was paid for by the company in the approximate amount of $600; reduced food expenses because his business covers certain meals with an average of $20 per week for an annual value of $1,040, and a past history of home maintenance expenses in the amount of $1,000 per year.

15. The joint federal tax returns form 1997 to 1999 reveal Sterrett's W–2 income and the income which was directly deposited into the parties' checking account from Abell Elevator in the name of Tammy. The Court finds that Tammy during this time period of 1997 to 1999 worked very little at Abell Elevator and was a full time housewife taking care of the parties' two infant children. The income received in Tammy's name may have been a method by which Abell Elevator allowed Sterrett to receive additional income in Tammy's name while Tammy did not work at Abell Elevator. However, it is clear that that income was terminated in 2000.

\* \* \* \* \* \*

17. The Court finds that Sterrett's 2000 income as reflected from the evidence proffered at trial indicates that Sterrett is projected to earn $102,972.57 for the year 2000. This base salary income equates to $1,980.24 per week (See Wife's Exhibit 3).

18. The Court finds Abell Elevator pays Sterrett's health insurance and that has been included in the W–2's presented.

19. The Court has averaged Sterrett's incomes by W–2 for 1998 ($115,026.69), for 1999 ($96,038.28) and 2000 projections ($102,972.57) for an average annual base pay of $105,865.38.[1] The additional

---

1. Sterrett correctly notes that by using the three-year income averaging method, as com-

benefits of auto use ($4,800 year), YMCA membership ($600), reduced food expenses ($1,040 year) and home maintenance history ($1000 year) bring a child support wage of $113,305.38[2] per year which equals $2,178.95 per week in gross income.

20. The Court finds that Sterrett has the ability to borrow substantial funds from his father's company, Abell Elevator, and to pay those funds back over a period of time, interest free (See Wife's Exhibit 11).

21. The Court finds that Tammy proffered evidence that Abell Elevator paid on behalf of the parties some of their normal living expenses.

22. The Court finds that Tammy's annual gross income for child support purposes is $15,600 and a weekly gross of $300, respectively.

23. The Court makes the following findings concerning the amount of child support that Sterrett should pay:

> a. Sterrett's actual/imputed weekly income is $2,178.95 per week and Tammy's actual income is $300 per week.

> b. Neither party has a child support obligation for prior born children.

> c. There are no work related childcare expenses.

> d. The weekly health insurance premium paid by Sterrett for the minor children is $24.24.

> e. Sterrett should be granted a credit for visitation in the amount of 5% or $20.05 of the recommended child support obligation.

> Based upon the foregoing findings, Sterrett should be ordered to pay the sum of $357 per week in child support. . . .

(Appellant's App. 11–17). The trial court both imputed income to Sterrett and averaged his income over a three-year period.

 "For the purposes of determining the parents' income in the child support guideline calculation, the definition of 'weekly gross income' is broadly defined to include not only actual income from employment, but also potential income and imputed income from 'in-kind' benefits." *Glover v. Torrence,* 723 N.E.2d 924, 936 (Ind.Ct.App.2000). A trial court is vested with broad discretion in imputing income to a child support obligor in order to ensure that the obligor does not evade the obligation. *Id.* The Child Support Rules and Guidelines, Guideline 3 states: "Expense reimbursements or in-kind payments received by a parent in the course of employment, self-employment, or operation of a business should be counted as income if they are significant and reduce personal living expenses[,]" and include "a company car, free housing, or reimbursed meals."

The Commentary to Guideline 3 notes that trial courts should take care to examine the circumstances before accepting a "snapshot" verification of an obligor's income. The Commentary suggests that:

> One pay stub standing alone can be very misleading, as can other forms of documentation. This is particularly true for salesmen, professionals and others who receive commissions or bonuses, or others who have the ability to defer payments, thereby distorting the true pic-

piled from his W–2 forms for 1998 and 1999 and the projection for 2000, his averaged income is actually $104,679.18 ($115,026.69 + $96,038.28 + $102,972.57 = $314,037.54 / 3 = $104,679.18).

2. The total including the imputed income is actually $112,119.18, or $2,156.14 per week (three-year average $104,679.18 + imputed benefits $7,440 = $112,119.18).

ture of their income in the short term. When in doubt, it is suggested that income tax returns for the last two or three years be reviewed.

Child Support Rules and Guidelines, Guideline 3 Commentary.

█ It is true that the Commentary makes the suggestion to income average or view more than one year in the context of verifying income for self-employed obligors. *See also Schaeffer v. Schaeffer,* 717 N.E.2d 915, 917 (Ind.Ct.App.1999) (income averaging over five-year period rejected for self-employed obligor because income continually increased over period indicating that averaging not used to reflect true picture of fluctuation, but merely to lower obligation); *Bower v. Bower,* 697 N.E.2d 110, 113–14 (Ind.Ct.App.1998) (income averaging used based upon "sizable variations" in commodity trader's self-employment income). However, it does not follow, as asserted by Sterrett, that income averaging cannot be used when an obligor's income, other than from self-employment, is subject to fluctuation. Further, the evidence reveals that Sterrett, as president of his father's business, treated the business as though he was self-employed in some respects: the business paid for maintenance to Sterrett and Tammy's residence, the business paid some credit card expenses incurred by Sterrett and Tammy, and the business issued salary checks to Tammy, deposited in Sterrett's account, without Tammy performing services. The trial court did not err by using income averaging over a three-year period to fix Sterrett's income in order to set child support.

However, as set out in footnotes 1 and 2, Sterrett correctly asserts that even if the income-averaging method is used, the trial court's figures are inaccurate. We agree.

Sterrett does not dispute that his projected 2000 salary of $102,972.57, as found by the trial court, is supported by the evidence in the record. In fact, Sterrett urges that the trial court should have used that figure to calculate his support. On the other hand, Sterrett explicitly stated in his brief that he has chosen not to dispute the inclusion of imputed benefits in his income. Thus, even pursuant to Sterrett's contention, the imputed benefits of $7,440 added to his projected 2000 salary of $102,972.57 would result in an annual averaged income of $110,412.57, and a weekly averaged income of $2,123.32. Whereas, using the correct figures, under the trial court's three-year income-averaging method, Sterrett's averaged income with the imputed benefits is $112,119.18 annually and $2,156.14 weekly. As a result, Sterrett's weekly gross income combined with Tammy's weekly gross income of $300 equals $2,423.32 under Sterrett's calculation and $2,456.14 under the trial court's three-year income-averaging calculation. The Child Support Rules and Guidelines set the child support amount for two children at $429 for the combined weekly adjusted income of $2,423.32, and at $431 for the combined weekly adjusted income of $2,456.14: a difference of $2 per week. Sterrett's income is responsible for 88% of the total child support obligation, or $377.52 under his calculation and $379.28 under the income-averaging calculation.

The trial court determined that Sterrett was entitled to a 5% adjustment to his weekly child support obligation for visiting the children, and an adjustment for the $24.24 Sterrett pays weekly for health insurance premiums. Using Sterrett's figures his total child support obligation is $334.40 per week. Under the income-averaging method, Sterrett's total child support obligation is $336.06. The trial court ordered Sterrett to pay $357 per week.

We hold that the trial court did not abuse its discretion by using the income-

averaging method to determine Sterrett's income for child support purposes; however, the calculation errors require remand for correction.[3]

## 2. *Maintenance*

 Sterrett contends that the trial court erred by awarding Tammy a three-year period of spousal maintenance at $400 per month. Regarding spousal maintenance, the trial court entered eleven findings including: 1) that Tammy left a "good job" with eight years of seniority and a 401(K) when she married and had children, 2) the time she has been out of the workforce to be the primary homemaker and caregiver for the children, and help Sterrett entertain business associates, 3) that she held only short-term employment and earned wages "ranging between $7 and $9.50 per hour" during the marriage, and 4) her desire to pursue her education to improve her earnings ability.

 After considering:

(A) the educational level of each spouse at the time of marriage and at the time the action is commenced;

(B) whether an interruption in the education, training, or employment of a spouse who is seeking maintenance occurred during the marriage as a result of homemaking or child care responsibilities, or both;

(C) the earning capacity of each spouse, including educational background, training, employment skills, work experience, and length of presence in or absence from the job market; and

(D) the time and expense necessary to acquire sufficient education or training to enable the spouse who is

seeking maintenance to find appropriate employment;

a court may find that rehabilitative maintenance for the spouse seeking maintenance is necessary in an amount and for a period of time that the court considers appropriate, but not to exceed three (3) years from the date of the final decree.

Ind.Code § 31–15–7–2(3). We presume that a trial court properly considered the statutory factors before reaching a determination to grant or deny a request for maintenance. *Moore v. Moore*, 695 N.E.2d 1004, 1007 (Ind.Ct.App.1998). We review a decision to award maintenance under an abuse of discretion standard. *Id.*

The trial court entered eleven findings based upon the statutory factors within I.C. § 31–15–17–2(3). We decline Sterrett's invitation to require the trial court to order Tammy to attend school with the maintenance payments. Despite Sterrett's assertion that Tammy is a capable worker who is not in need of additional education in order to secure a better paying job, the trial court's determination is amply supported by the record. The trial court did not abuse its discretion by ordering Sterrett to pay spousal maintenance.

## 3. *Tractor*

 Sterrett contends that the trial court erred by including the value of a Massey Ferguson four-wheel drive diesel tractor with a loader and a groomer mower, purchased with a check drawn on an Abell Elevator account, in the marital estate and awarding the value of the tractor to Tammy.

 When we review a claim that the trial court improperly divided marital

---

**3.** We note that absent the calculation error, Sterrett's figures obtain less than a $2 reduction in his weekly child support obligation.

*But see, Glover*, 723 N.E.2d at 937 (a $5 per week deviation "significant enough to warrant appellate relief").

property, we consider only the evidence most favorable to the trial court's disposition of the property, and we decide whether the trial court's decision constitutes an abuse of discretion. *In re Marriage of Preston,* 704 N.E.2d 1093, 1096 (Ind.Ct. App.1999). "An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* Also, a trial court abuses its discretion when it "misinterprets the law or disregards evidence of factors listed in the controlling statute." *Id.*

Here, the trial court was presented with evidence, *inter alia,* that the tractor was purchased with a check from Abell Elevator in order to avoid paying sales tax, that the tractor was used exclusively at Sterrett and Tammy's property (with the exception of a few times by family members), and that the Abell Elevator property did not have any use for the mower attachment.

The trial court entered nine findings of fact with regard to the ownership and valuation of the tractor. The court awarded the entire value to Tammy, recognizing that the award altered the equal division of property. The court entered findings to support the unequal division of property. The court rejected Sterrett's evidence and contentions that the tractor should not be included in the marital estate because it was an asset of his father's company. The court followed the statutory requirement that findings be entered when a deviation from an equal division of assets occurs. *See* Ind.Code § 31–15–7–5. The trial court found, *inter alia:*

> 62. The Court determines that Tammy's need for cash and her asset distribution from the parties['] division of assets, along with her minimal income and reduced earning capacity is sufficient to assign the marital tractor to Tammy.
>
> 63. The Court determines that a deviation from the equal division of the tractor is necessary to make a fair and reasonable distribution due to the necessity of Tammy to maintain a new residence for the benefit of the minor children, her current minimal income earnings compared to Sterrett's and Tammy's homemaking contribution during the marriage . . . .

(Appellant's App. 25).

The trial court based the award upon evidence in the record and supported its determination that the value of the tractor should be awarded to Tammy. Thus, the court did not abuse its discretion with regard to the tractor.

We affirm and remand for correction of calculation errors.

MATHIAS, J., and VAIDIK, J., concur.