## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| D. Eric Neff | J. Douglas Angel |
| Crown Point, Indiana | Law Offices of J. Douglas Angel & Associates |
| | Munster, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

Rose A. Martiradonna
f/k/a Rose A. Rynberk,

*Appellant-Petitioner,*

v.

Gilbert W. Rynberk,

*Appellee-Respondent*

July 10, 2015

Court of Appeals Case No. 45A03-1411-DR-411

Appeal from the Lake Circuit Court
The Honorable George C. Paras, Judge

Case No. 45C01-1203-DR-273

**Crone, Judge.**

## Case Summary

Rose A. Martiradonna f/k/a Rose A. Rynberk ("Wife") appeals the trial court's order dissolving her marriage to Gilbert W. Rynberk ("Husband"). She argues

that the trial court abused its discretion in denying her motions to reopen discovery and clearly erred in finding that three bonuses Husband received during the pendency of the dissolution action were not marital assets subject to division. Finding no error, we affirm.

## Facts and Procedural History

[2] Wife and Husband were married in July 1998. They had two children. Wife and Husband agreed that Wife would stay at home to care for their children. In 1998, Wife quit her job as a senior clinical research assistant earning $51,000 per year. Husband was employed as the president of the First National Bank of Illinois ("the Bank"). On March 31, 2007, he signed an employment agreement with the Bank for an initial term of five years that would automatically extend for an additional year on March 31, 2012. The agreement provided that the Bank would pay Husband a yearly salary of $178,500, with annual reviews for merit increases and bonuses. Relevant to this appeal, the agreement provided that in the event of an acquisition or merger of the Bank with another financial institution, Husband could terminate his employment and continue to receive his salary for the remainder of the contract term. Appellant's App. at 447.

[3] Wife and Husband separated in November 2011. On March 30, 2012, Wife filed a petition for legal separation. On May 18, 2012, Husband filed a petition for marriage dissolution. Both Wife and Husband hired replacement counsel. The trial court scheduled an initial pretrial conference for October 17, 2012.

[4] In August 2012, Wintrust Financial Corporation ("Wintrust") signed a letter of intent to purchase the Bank. In October 2012, the Bank and Husband agreed to a modification of the 2007 employment agreement. The modification consisted of deleting the provision allowing Husband to terminate his employment in the event of a merger or acquisition and continue to receive his salary for the remainder of the term. That provision was replaced with a new provision requiring the Bank to pay Husband a "Deal Bonus" of 2.99 multiplied by his base salary if he was still employed with the Bank on the date of an acquisition or merger with another financial institution. *Id.* at 449. The Deal Bonus was offered "[i]n consideration of [Husband's] long and dedicated service to the [Bank]." *Id.*

[5] On October 17, 2012, the date of the scheduled pretrial conference, Wife's attorney filed a motion to substitute counsel. The pretrial conference was continued to permit Wife's third attorney time to familiarize himself with the case.

[6] On November 30, 2012, the Bank paid Husband a bonus of $100,000 in recognition of a July 2012 regulatory finding that resulted in savings to the Bank.

[7] In January 2013, Wintrust made a public announcement of its intent to acquire the Bank, and the Bank and Wintrust executed a formal agreement for the acquisition. Husband signed an employment agreement with Wintrust that would become effective if Wintrust's acquisition of the Bank was completed.

[8] On January 4, 2013, Wife amended her petition for legal separation to marriage dissolution. Also in January, the initial pretrial conference was held, and the trial court issued an order directing the parties to proceed with discovery.

[9] On April 3, 2013, another pretrial conference was held, and the trial court issued an order stating, "All Discovery … shall be closed and completed on [August 7, 2013]." *Id*. at 42. The order also stated that the failure to comply with the order and other orders in the case could result in the exclusion of evidence, sanction, dismissal, default, or delay. *Id*. at 40. In addition, the trial court ordered the parties to engage in mediation to be completed by August 30, 2013. Later in April, Wife hired her fourth attorney.

[10] On May 1, 2013, Wintrust closed on its acquisition of the Bank. On May 15, 2013, the Bank paid Husband a Deal Bonus of $759,238.19 as required under the October 2012 modification of the Bank and Husband's employment agreement.

[11] On August 2, 2013, less than a week before the discovery deadline, Wife served notice to take Husband's deposition. On August 14, 2013, Wife took Husband's deposition, which lasted six hours. Also in August 2013, the parties participated in court-ordered mediation, which was unsuccessful.

[12] On September 11, 2013, a pretrial conference was held. Wife's attorney told the trial court that Wife wished to initiate third-party discovery in Illinois regarding Wintrust's acquisition of the Bank. The trial court stated that discovery was closed and that Wife had not filed a motion to extend it. On

October 7, 2013, Wife filed a motion to conduct further discovery to seek information from Wintrust regarding its acquisition of the Bank so that she could obtain evidence revealing whether Husband's bonuses were marital assets. The trial court set the motion to be heard during the final pretrial conference. That conference was held on November 1, 2013, and the trial court denied Wife's motion to conduct further discovery. The trial court set the final hearing for February 5 and 6, 2014.

[13] In January 2014, Wintrust paid bonuses to its senior managers for 2013. Husband's bonus of $51,000 was based on the time period of 2013 that he was employed by Wintrust.

[14] On January 28, 2014, Wife filed a request for ruling in advance of hearing, asking the trial court to order the parties to exchange up-to-date documentation on the valuation of marital assets. Following a hearing, the trial court denied Wife's request.

[15] On February 3, 2014, two days before the scheduled final hearing, Wife's attorney filed an emergency motion for leave of court to withdraw appearance, stating that Wife refused to communicate or cooperate in preparing for trial. The following morning, the trial court held a hearing. The trial court permitted Wife's counsel to withdraw, granted Wife's oral motion to continue the final hearing, granted her thirty days to obtain new counsel, and set a status hearing for March 7, 2014. The trial court affirmed its previous orders that discovery was closed and ordered that "there shall be no further discovery." *Id*. at 140.

[16] On March 7, 2014, Wife's fifth attorney entered his appearance and was present at the status conference. He asked the trial court for time to review the case and if necessary conduct specific discovery on pre- and post-petition values of marital property. The trial court informed Wife's new counsel that at a previous hearing, it had determined that documentation regarding pre- and post-petition valuation had been provided. Husband objected to reopening discovery. The trial court informed Wife's attorney that discovery was closed "unless you find something very extraordinary in there." March 7, 2014 Tr. at 8. The trial court gave Wife until April 18, 2014, to file a request for additional discovery. Another final pretrial conference was set for May 30, 2014, and the final hearing was reset for June 16 and 17, 2014.

[17] On May 20, 2014, Wife filed a motion to reopen discovery and continue trial. In relevant part, she requested additional discovery to obtain information regarding Wintrust's acquisition of the Bank. At the May 30, 2014 final pretrial conference, the trial court heard argument on Wife's motion and denied it. On June 16 and 17, 2014, the final hearing was held.

[18] In July 2014, the trial court issued the dissolution decree, which in relevant part found that Husband's November 2012, May 2013, and January 2014 bonuses were not part of the marital estate subject to division but were income for purposes of determining child support. The trial court ordered a 60/40 division of the marital estate in Wife's favor. Wife filed a motion to correct error, alleging in relevant part that the trial court erred in denying her motions to reopen discovery and in determining that Husband's bonuses were not part of

the marital estate. Husband also filed a motion to correct error, alleging that the trial court erred in finding that his bonuses were income rather than assets for purposes of child support. Following a hearing, the trial court issued an order denying their motions. Wife appeals.

## Discussion and Decision

## Section 1 – The trial court did not abuse its discretion in denying Wife's motion to reopen discovery.

[19] Wife contends that the trial court abused its discretion in denying her motions to reopen discovery.[1]

> The discovery rules are designed to allow a liberal discovery process, the purposes of which are to provide parties with information essential to litigation of the issues, to eliminate surprise, and to promote settlement. Due to the fact-sensitive nature of discovery matters, the ruling of the trial court is cloaked in a strong presumption of correctness on appeal. Our standard of review in discovery matters is limited to determining whether the trial court abused its discretion. This court will reverse only where the trial court has reached an erroneous conclusion which is clearly against the logic and effect of the facts of the case. There will be no reversal of a trial court discovery order without a showing of prejudice.

---

[1] In the argument section of her brief, Wife mentions three orders in which the trial court denied her requests to extend discovery. These orders are dated November 11, 2013, January 31, 2014, and May 30, 2014. Appellant's Br. at 16. However, she does not present any argument specific to the January 31, 2014 order, and therefore any claim regarding that ruling is waived. *Thacker v. Wentzel*, 797 N.E.2d 342, 345 (Ind. Ct. App. 2003) ("It is well settled that we will not consider an appellant's assertion on appeal when he has not presented cogent argument supported by authority and references to the record as required by the rules.").

*Hite v. Haase*, 729 N.E.2d 170, 181 (Ind. Ct. App. 2000) (quoting *Nat'l Eng'g & Contracting Co. v. C & P Eng'g & Mfg. Co.*, 676 N.E.2d 372, 375 (Ind. Ct. App. 1997)). "Discovery, like all matters of procedure, has ultimate and necessary boundaries. It is within the discretion of the trial court to place bounds on the duration of discovery." *Smith v. Taulman*, 20 N.E.3d 555, 563 (Ind. Ct. App. 2014) (quoting *Mut. Sec. Life Ins. Co. v. Fid. & Deposit Co.*, 659 N.E.2d 1096, 1103 (Ind. Ct. App. 1995), *trans. denied* (1996)).

[20] Before turning to the merits of Wife's argument, we must address two preliminary matters. First, Husband contends that Wife waived her claims of error regarding discovery because "she made no claim of any inability to cross examine [Husband], she made no offer to prove, and she made no request for any continuance to allow her to obtain additional evidence." Appellee's Br. at 24. We disagree that any of these actions were necessary to preserve the particular claims of error here; specifically, that the trial court erred in denying her motions to reopen discovery. The actions mentioned by Father are applicable to the preservation of claims of error related to the admission of evidence or to discovery violations that culminated in the admission of evidence at trial. In fact, all the cases relied on by Husband for his waiver argument involve the admission of evidence. *See Farley Neighborhood Ass'n v. Town of Speedway*, 765 N.E.2d 1226, 1231 (Ind. 2002) (in action challenging increase in sewer utility rates, association's complaint that it did not receive town's cost-of-service analysis until the night before trial was waived because association failed to object to admission of analysis or request continuance); *Everage v. N.*

*Ind. Pub. Serv. Co.*, 825 N.E.2d 941, 948 (Ind. Ct. App. 2005) (Everage's argument that trial court erred in its choice of discovery sanction by failing to strike testimony of several witnesses rather than striking testimony of only one witness was waived because he did not object to witnesses' testimony at trial and only asked for sanctions after trial); *Van Cleave v. State*, 517 N.E.2d 356, 372 (Ind. 1987) (in reviewing defendant's claim that he received ineffective assistance of counsel because counsel failed to discover evidence that State discovered but failed to disclose to defendant–a discovery violation–and used to impeach defendant at trial, court observed that "failure to object and request a continuance or exclusion of the evidence is grounds for waiver of a discovery error"). We are unpersuaded by Husband's argument that Wife waived her claim that the trial court erred in denying her motions to reopen discovery. *Cf. Allen v. Scherer*, 452 N.E.2d 1031, 1036 (Ind. Ct. App. 1983) (concluding that Allen waived issue that court erred in denying her motion to compel answers to interrogatories because trial court agreed to reconsider the matter but she failed to raise issue again).

[21] Second, the parties dispute the appropriate factors we must consider in determining whether the trial court abused its discretion in declining to reopen discovery. Wife claims that a trial court commits reversible error in denying a motion to reopen discovery if the movant (1) demonstrates good cause for her request and (2) would suffer prejudice if the motion was denied. Appellant's Br. at 15; Reply Br. at 6. Wife appears to argue that good cause is a good reason for the request. Husband states that there are additional factors to

consider, such as whether the discovery was foreseeable, whether Wife engaged in dilatory tactics, the length of time the case had already been pending, and the prejudice he would suffer if the case was delayed by the reopening of discovery. Appellee's Br. at 25. Wife argues that the factors advanced by Husband are not applicable because the case relied on by Husband is distinguishable.

[22] Wife's conception of "good cause" is too narrow. Depending on the nature and facts of the particular case, good cause may encompass some or all of the considerations that Husband advances as well as others that he does not mention. One of Wife's cases illustrates this notion. In *In J.P. v. G.M.*, 14 N.E.3d 786, 790 (Ind. Ct. App. 2014 ), a grandparent visitation case, another panel of this Court concluded that the trial court abused its discretion in denying father's motion for continuance so that he could obtain counsel based on the following reasons: he had a fundamental liberty interest in child's care, the case required an understating of grandparent visitation law and the rules of evidence, grandparents had counsel, father could obtain counsel in one week, and it was father's first motion to continue. *See also Hess v. Hess*, 679 N.E.2d 153, 154-55 (Ind. Ct. App. 1997) (in marriage dissolution proceeding, trial court abused its discretion in denying husband's motion for continuance where his attorney withdrew four days prior to trial, husband appeared pro se at trial and explained that he had unsuccessfully tried to find new counsel, record did not show husband engaged in dilatory tactics, and husband was deprived of counsel at the most crucial state in the proceedings).

[23]     Moreover, we decline to adopt an overly formulaic approach to determining whether a trial court abused its discretion in denying a motion to reopen discovery. "'A trial judge has the responsibility to direct the trial in a manner that facilitates the ascertainment of truth, ensures fairness, and obtains economy of time and effort commensurate with the rights of [the parties].'" *Wright v. Miller*, 989 N.E.2d 324, 327 (Ind. 2013) (quoting *VanWay v. State*, 541 N.E.2d 523, 526 (Ind. 1989)). In analyzing whether the trial court abused its discretion in imposing certain discovery sanctions, our supreme court recognized that the broad discretionary power afforded to trial courts is necessary in light of the unique circumstances each case presents. *Id.* at 330. The *Wright* court emphasized, "'It may well be that other factors will be relevant in a given case or that some of the foregoing will be inapplicable to a certain set of facts.'" *Id.* at 329-30 (quoting *Wiseheart v. State*, 491 N.E.2d 985, 991 (Ind. 1986)).

[24]     We now turn to the merits of Wife's argument. Wife asserts that the discovery she sought, namely, information regarding the timing of Wintrust's acquisition of the Bank, was essential in determining whether Husband's November 2012, May 2013, and January 2014 bonuses were marital property. She contends that Husband would not reveal the necessary information at his deposition. Appellant's Br. at 21. However, Wife does not discuss any specific questions that Husband refused to answer at his deposition which bore on the issue of the

timing of the acquisition.[2] Our review of Husband's deposition shows that he answered many questions regarding Wintrust's acquisition of the Bank. He testified that the Bank's 2011 board minutes would not reflect any discussions about the acquisition, that Wintrust made its first overture in December 2011 when Husband met informally with Wintrust's CEO, and that the first discussions regarding Wintrust's possible acquisition of the Bank began in early 2012. Appellant's App. at 82-84. He also testified that the acquisition agreement was signed in January of 2013, that Wintrust thereafter made the required federal filings, and that the closing of the transaction occurred on May 1, 2013, when he became an employee of Wintrust. *Id*. at 81-82. Furthermore, Wife obtained copies of Husband's 2007 employment agreement with the Bank, the 2012 modification, and his Wintrust employment agreement. We are unpersuaded by Wife's argument that she needed to pursue third-party discovery because Husband would not provide sufficient information regarding Wintrust's acquisition of the Bank.[3]

[25] Wife also contends that the trial court improperly based its decision entirely on expediency. We disagree. Although the trial court did discuss the difficulties of seeking discovery from a foreign corporation, the court also opined that her

---

[2] In claiming that Husband refused to answer questions about the acquisition during his deposition, Wife merely cites to the November 2014 hearing at which her counsel asserted that Husband refused to answer questions at his deposition. Appellant's Br. at 21 (citing Appellant's App. at 116). Wife baldly claims that Husband failed to cooperate in providing documents without citation to the record. *Id*. at 22.

[3] We note that Wife offers no reason for her failure to pursue the discovery she sought during the time period permitted by the trial court and no reason why she waited two months after taking Husband's deposition to request that the trial court reopen discovery.

motion "goes more to the quantity of evidence, and not so much the quality of it." Appellant's App. at 127-33. The court also observed that the parties had already spent "an incredible amount of time arguing the case already based on the evidence that you have …I think you have sufficient evidence in front of you that has been obtained through discovery to move forward with the claims that are being made." *Id*. at 133. The trial court concluded that Wife had sufficient evidence from which to argue her case and that additional discovery was unwarranted. We cannot say that its conclusion is clearly against the facts and circumstances of the case. Accordingly, we conclude that the trial court did not abuse its discretion in denying Wife's motions to reopen discovery.

## Section 2 – The trial court did not err in finding that Husband's bonuses were not marital assets.

[26] Wife also appeals the trial court's division of marital assets.

> The division of marital assets is within the trial court's discretion, and we will reverse only for an abuse of discretion. A party challenging the trial court's division of marital property must overcome a strong presumption that the trial court considered and complied with the applicable statute, and that presumption is one of the strongest presumptions applicable to our consideration on appeal. We may not reweigh the evidence or assess the credibility of the witnesses, and we will consider only the evidence most favorable to the trial court's disposition of the marital property.

*O'Connell v. O'Connell*, 889 N.E.2d 1, 10 (Ind. Ct. App. 2008) (citations and quotation marks omitted).

[27] In this case, the trial court sua sponte issued findings of facts and conclusions thereon. We will "not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). "Findings of fact are only clearly erroneous if there is no factual support for them in the record whatsoever, either directly or by inference." *Johnson v. Wysocki*, 990 N.E.2d 456, 460 (Ind. 2013). "A judgment is only clearly erroneous 'if it applies the wrong legal standard to properly found facts.'" *Id.* (quoting *Woodruff v. Ind. Family & Social Servs. Admin.*, 964 N.E.2d 784, 790 (Ind. 2012)).

[28] Wife contends that the trial court improperly excluded Husband's bonuses from the marital estate.

> It is well settled that in a dissolution action, all marital property goes into the marital pot for division, whether it was owned by either spouse before the marriage, acquired by either spouse after the marriage and before final separation of the parties, or acquired by their joint efforts. Ind. Code § 31-15-7-4(a). …. The requirement that all marital assets be placed in the marital pot is meant to insure that the trial court first determines that value before endeavoring to divide property. Indiana's "one pot" theory prohibits the exclusion of any asset in which a party has a vested interest from the scope of the trial court's power to divide and award.

*Falatovics v. Falatovics*, 15 N.E.3d 108, 110 (Ind. Ct. App. 2014) (citations and quotation marks omitted). "[I]n a dissolution proceeding, the trial court is mandated, by statute and case law, to divide the assets and liabilities of the parties to the proceeding in which they have a vested present interest. Of course, the trial court may not divide assets which do not exist just as it may not

divide liabilities which do not exist." *In re Marriage of Lay*, 512 N.E.2d 1120, 1123-24 (Ind. Ct. App. 1987).

[29] Husband's and Wife's date of final separation was March 30, 2012, when Wife filed her petition for legal separation. *See Crider v. Crider*, 26 N.E.3d 1045, 1049 (Ind. Ct. App. 2015) (concluding that where legal separation proceedings are already pending when petition for dissolution is filed, date of final separation is date that petition for legal separation is filed). Husband received a bonus from the Bank in November 2012 for $100,000, and another bonus from that Bank in May 2013 for $759,238.19, and a bonus from Wintrust in January 2014 for $51,000. Thus, all the bonuses paid to Husband occurred after the parties' final separation.

[30]  "[I]t is well established in Indiana that 'future earnings are not considered part of the marital estate for purposes of property division.'" *Severs v. Severs*, 837 N.E.2d 498, 499 (Ind. 2005) (quoting *Beckly v. Beckly*, 822 N.E.2d 158, 160 (Ind. 2005)). "[A] trial court may not include in the marital estate an interest in a spouse's future income, whether the source of that income constitutes salary, pension or retirement benefits." *Neffle v. Neffle*, 483 N.E.2d 767, 769 (Ind. Ct. App. 1985). Whether a bonus was a marital asset was considered in *In re Marriage of Davis*, 182 Ind. App. 342, 395 N.E.2d 1254 (1979). There, wife and husband separated on April 17, 1977. On July 31, 1977, wife received a bonus of over $10,000 which was based upon the corporate president's personal appraisal of her efforts for the fiscal year ending May 31, 1977. The *Davis* court concluded that the bonus should not have been treated as a marital asset subject

to division because wife "was not possessed of a present interest in the bonus at the time of the parties' final separation." *Id*. at 1258.

[31] Wife acknowledges that Husband received the bonuses after the date of final separation, but she asserts that Husband's bonuses constitute future compensation for past services. Future compensation for past services can qualify as a marital asset, but the services must have been rendered during the marriage. *Sedwick v. Sedwick*, 446 N.E.2d 8, 10 (Ind. Ct. App. 1983). In *Sedwick*, husband rendered services as an attorney in a personal injury case during his marriage to wife for which he received a structured settlement annuity of nine payments of $40,000 each. He had received one annuity payment before the date of final separation. The trial court found that the remaining eight annuity payments constituted future income and were not marital assets subject to division. This court found that the trial court erred in excluding the annuity payments from the marital estate because there was "no question … but that the annuity was funded by [husband's] earnings for services which he had performed during the marriage." *Id*. at 10.

[32] Considering each of Husband's bonuses one by one, we observe that the November 2012 bonus was paid in recognition of the savings accrued to the Bank as a result of a July 2012 regulatory finding. The regulatory finding occurred after the date of final separation, and therefore Husband did not earn the bonus during the marriage. Accordingly, we find no error in the trial court's determination that this bonus was not a marital asset. We can also quickly dispense with the 2014 Wintrust bonus. Wintrust paid bonuses in 2014

to its senior managers for their employment during 2013. Husband was not even employed by Wintrust until after the date of final separation. Therefore, Husband did not earn the bonus during the course of the marriage. Again, we find no error in the trial court's determination that this bonus was not a marital asset.

[33] As for the May 2013 "Deal Bonus," the analysis is marginally more complicated. The Deal Bonus was paid pursuant to the October 2012 employment agreement modification. The October 2012 modification was executed after the date of final separation, which would lead us to conclude that any bonus earned based on that agreement was not earned during the marriage. However, Wife argues that Husband earned the Deal Bonus during the marriage because it was offered "[i]n consideration of [Husband's] long and dedicated service to the [Bank]." Appellant's App. at 449. We read this language merely as an expression of gratitude.

[34] Moreover, the Deal Bonus was contingent upon two conditions, that the Bank would be acquired by or merge with another financial institution and that Husband be employed by the Bank if and when that event occurred. As previously noted, "Indiana's 'one pot' theory prohibits the exclusion of any asset in which a party has a *vested interest* from the scope of the trial court's power to divide and award." *Falatovics*, 15 N.E.3d at 110 (emphasis added). "The word 'vest' generally means either vesting in possession or vesting in interest." *In re Marriage of Preston*, 704 N.E.2d 1093, 1097 (Ind. Ct. App. 1999). "Vesting in possession connotes an immediate existing right of present

enjoyment, while vesting in interest implies a presently fixed right to future enjoyment." *Id.* At the date of final separation, Husband did not have a vested interest in the Deal Bonus, and in fact the Deal Bonus was not even part of Husband's employment agreement with the Bank. Accordingly, we find no error in the trial court's finding that the Deal Bonus was not a marital asset. Therefore, we affirm.

[35] Affirmed.

Brown, J., and Pyle, J., concur.