ATTORNEY FOR APPELLANT
Stephen P. Rothberg
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE
Lindsey A. Grossnickle
Columbia City, Indiana

# In the
# Indiana Supreme Court

**FILED**
Sep 29 2010, 12:14 pm

CLERK
of the supreme court,
court of appeals and
tax court

No. 02S03-1002-CV-122

ANNE M. BINGLEY,

*Appellant (Defendant below),*

v.

CHARLES B. BINGLEY,

*Appellee (Plaintiff below).*

Appeal from the Court, No. 02D07-0605-DR-274
The Honorable Charles F. Pratt, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 02A03-0904-CV-187

**September 29, 2010**

**Shepard, Chief Justice.**

Charles Bingley filed to dissolve his marriage with appellant Anne Bingley. Charles had retired from his employment with Navistar Corp., which paid premiums to a health insurance company on Charles's behalf as part of his pension plan. Anne argued that the premiums constituted property subject to division. The trial court held that the benefits Charles was receiving did not constitute a marital asset.

Because we conclude that employer-provided health insurance benefits do constitute an asset once they have vested in a party to the marriage, we reverse.

**Facts and Procedural History**

On May 9, 2006, Charles Bingley filed to dissolve his marriage with Anne Bingley, his wife of thirty-seven years. At the time of filing, Charles was seventy-five years old and had retired from Navistar Corp. During Charles's retirement, Navistar paid him a monthly stipend as part of his participation in a defined-benefit pension plan.

Under the pension plan, Navistar also paid a health insurance company $845.74 per month in premiums on Charles's behalf and had promised to do so for the remainder of Charles's life. (App. at 19.) Charles did not elect this arrangement in lieu of a larger monthly stipend, nor did he have the choice to do so. (App. at 17, 19.) His right to health insurance benefits was not subject to divestiture, division, or transfer. (App. at 17, 19.)

After the final hearing, the trial court left the record open so the parties could submit additional information about Charles's health insurance benefits. Anne filed a supplement to the record in which she argued using actuarial principles that the premiums had a present value of $101,556. (App. at 25, 39, 44.) The trial court considered this value a contention instead of evidence because Charles limited his response to arguing that the premiums did not constitute property (he did not address the question of valuation).[1] (App. at 25.)

---

[1] The trial court based its decision to consider Anne's valuation a contention instead of evidence on the fact that Charles did not have the opportunity to respond to Anne's valuation. (App. at 25.) It is not clear from the record why Charles did not have this opportunity because he filed a Response to Anne's Motion to Supplement the Record. (App. at 35.)

When the trial court issued its decree of dissolution, it held that the premiums did not constitute property within the meaning of Indiana Code § 31-9-2-98(b) (2008). The court reasoned that because Charles's premiums had no cash surrender value, they more closely resembled employer-provided group term life insurance than pension payments. (App. at 25); see also Metropolitan Life Ins. Co. v. Tallent, 445 N.E.2d 990, 991 (Ind. 1983).

Anne appealed, and the Court of Appeals affirmed. Bingley v. Bingley, 915 N.E.2d 1006 (Ind. Ct. App. 2009). We granted transfer, thereby vacating the decision of the Court of Appeals. Bingley v. Bingley, 929 N.E.2d 785 (Ind. 2010) (table); Ind. Appellate Rule 58(A).

## Standard of Review

We review a trial court's valuation of an asset in a marriage dissolution for an abuse of discretion. Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996) (citing Cleary v. Cleary, 582 N.E.2d 851 (Ind. Ct. App. 1991)). With respect to findings of fact about an asset's value, a trial court has not abused its discretion if sufficient evidence and reasonable inferences support that valuation. Id. (citing Porter v. Porter, 526 N.E.2d 219 (Ind. Ct. App. 1988)). Questions of law, however, are subject to de novo review. Fobar v. Vonderahe, 771 N.E.2d 57 (Ind. 2002).

## I.    The Health Insurance Benefits Are Property.

When a trial court dissolves a marriage, it must divide the property of the parties between them. Ind. Code § 31-15-7-4(a). For the purposes of such a dissolution, "property" means

> all assets of either party or both parties, including:
>
> (1) a present right to withdraw pension or retirement benefits;
>
> (2) the right to receive pension or retirement benefits that are not forfeited upon termination of employment or that are vested (as

3

> defined in Section 411 of the Internal Revenue Code) but that are payable after the dissolution of marriage; and
>
> (3) the right to receive disposable retired or retainer pay (as defined in 10 U.S.C. § 1408(a)) acquired during the marriage that is or may be payable after the dissolution of marriage.

Ind. Code § 31-9-2-98(b) (emphasis added). The trial court may divide the property by awarding parts of the property to one of the parties and requiring either party to pay an amount to the other to achieve a just and proper distribution. Ind. Code § 31-15-7-4(b)(2).

Anne argues that health insurance premiums being paid for Charles constitute retirement benefits that Charles earned during marriage, so the trial court should have included them in the marital property subject to division. (Appellant's Br. at 2.) She further argues that Navistar's paying premiums on Charles's behalf is analogous to a retirees receiving pension benefits. (Appellant's Br. at 3–4.) Finally, Anne argues that because Charles's right to his health insurance benefits had vested, the premium payments are analogous to vested pension benefits. (Appellant's Br. at 4.)

Charles responds that his health insurance premiums do not constitute marital assets because he cannot transfer or alienate his health insurance benefits, nor did he choose to receive them in lieu of a larger monthly stipend under his pension plan. (Appellee's Br. at 4.) Charles also argues that the value of the premiums is speculative because of the possibility that Navistar may someday file for bankruptcy or cancel his health insurance benefits. (Appellee's Br. at 4.)

Framing the question as whether the <u>premiums</u> constitute property misconceives the question. Rather than analyze whether Charles's health insurance <u>premiums</u> constitute retirement benefits within the meaning of subsection (2), we think it plain enough that Charles's health insurance <u>benefits</u> constitute an intangible asset.

The phrase "all assets" is broadly inclusive and is not limited to the list of examples that follows it. See <u>Beckley v. Beckley</u>, 822 N.E.2d 158, 163 (Ind. 2005) (holding lump sum

4

payment for lost wages and pain and suffering was an asset to the extent it compensated for pain and suffering). It has been customary to view the statute's list of examples simply as instances falling within the ambit of "all property" rather than as suggestions that "all" is somehow less than all-inclusive.[2] See, e.g., Helm v. Helm, 873 N.E.2d 83 (Ind. Ct. App. 2007) (lottery payments); Henry v. Henry, 758 N.E.2d 991 (Ind. Ct. App. 1995) (stock options); Sedwick v. Sedwick, 446 N.E.2d 8 (Ind. Ct. App. 1983) (structured settlement annuity).

Whether a right to a present or future benefit constitutes an asset that should be included in marital property depends mainly on whether it has vested by the time of dissolution. Compare Hill v. Hill, 863 N.E.2d 456, 460–61 (Ind. Ct. App. 2007) (holding pension plan was an asset when party was receiving payments at time of dissolution); with Bizik v. Bizik, 753 N.E.2d 762, 767–68 (Ind. Ct. App. 2001) (holding retirement plan was not an asset when it had not vested by time of dissolution). In other words, vesting is both a necessary and sufficient condition for a right to a benefit to constitute an asset. See Helm, 873 N.E.2d at 88 ("The common denominator . . . is whether the interest in the future payment is 'vested.'").

A right to a benefit can vest either in possession or in interest. In re Marriage of Preston, 704 N.E.2d 1093, 1097 (Ind. Ct. App. 1999) ("Vesting in possession connotes an immediate[ly] existing right of present enjoyment, while vesting in interest implies a presently fixed right to future enjoyment."). Vested pension rights represent "'intangible assets of a spouse [that] have been earned during the marriage, either through the contributions of the spouse [that] otherwise would have been available as assets during the marriage, or through contributions of the employer [that] constitute deferred compensation.'" Preston, 704 N.E.2d at 1097 (quoting 2

---

[2] Indeed, this is Anne's principal argument. The statute expressly includes retirement benefits in the definition of property even if they are payable after the marriage dissolution. Ind. Code § 31-9-2-98(b)(2). The only condition is that either the beneficiary does not forfeit them on termination of employment or the benefits have vested as defined in Section 411 of the Internal Revenue Code. Id.

Homer H. Clark, Jr., <u>The Law of Domestic Relations in the United States</u> § 16.6, at 208 (2d ed. 1987)).

A similar theory explains why disability payments received after a marriage dissolution are not assets for the purposes of a marriage dissolution. <u>Leisure v. Leisure</u>, 605 N.E.2d 755 (Ind. 1993) (holding workers' compensation payments were not assets to the extent they replaced lost future wages after marriage dissolution); <u>see</u> <u>also</u> <u>Beckley</u>, 822 N.E.2d at 162 (holding person did not have a vested interest in future wages). The exception to this rule occurs when a party purchases or contributes to disability insurance with marital assets, namely, wages in which the party had a present interest. <u>Gnerlich v. Gnerlich</u>, 538 N.E.2d 285, 286 (Ind. Ct. App. 1989).

Vesting also explains our holding that employer-provided group term life insurance is not an asset. <u>Tallent</u>, 445 N.E.2d at 991 (Ind. 1983). In <u>Tallent</u>, a husband changed the beneficiary on his life insurance policy from his wife to his mother after his wife filed to dissolve their marriage and just before he committed suicide. <u>Id.</u> The husband was subject to an order restraining him from disposing of his property, but we held that the life insurance policy was not an asset of the husband's. <u>Id.</u> The <u>beneficiary</u>, not the insured, had "'a defeasible vested interest in the policy, <u>a mere expectancy</u>, until after the death of the insured.'" <u>Id.</u> at 992 (quoting <u>Bronson v. N.W. Mut. Life Ins. Co.</u>, 129 N.E. 636, 639 (1921) (emphasis in original)).

We think Charles's health insurance benefits constitute an asset in the plain meaning of the word. Charles has a right to the medical services his health insurance will cover for the rest of his life. Because Navistar has assumed a monthly liability that Charles would otherwise have had to bear, Charles's health insurance benefits more closely resemble a right to future pension payments, which the Court of Appeals described as an intangible asset in <u>Preston</u>. 704 N.E.2d at 1097. Unlike the term life insurance in <u>Tallent</u>, the policy holder of which was not the same person as the beneficiary, the health insurance in this case benefits the same party to the marriage dissolution who owns the policy. 445 N.E.2d at 991.

6

Most importantly, Charles's health insurance benefits have vested. The parties did not dispute that Navistar was paying Charles's premiums at the time of dissolution. As a result, Charles had a present right to enjoy his health insurance benefits. Moreover, the parties did not even dispute that Charles's health insurance benefits were not subject to divestiture in future years. Tallent is doubly not on point because the beneficiary in that case had an interest that was defeasible. 445 N.E.2d at 992.

Charles's principal argument is that his health insurance benefits cannot constitute an asset because he cannot transfer or alienate them. (Appellee's Br. at 4.) As a result, Charles could not dispose of his health insurance benefits to generate cash to pay Anne in order to achieve a just and proper distribution. This illiquidity is relevant to the value a trial court may assign to an asset, but not to whether benefits constitute an asset in the first place. See Part II, infra.

Charles further argues that his health insurance benefits cannot constitute an asset because their value is speculative. As a result, Charles may have to pay Anne more to retain the asset than his share ends up being worth. As with illiquidity, however, the fact that a person bears the risk of future changes in value is relevant to the present value a trial court may assign to an asset, but not to whether benefits constitute an asset in the first place. See Part II, infra.

## II.    What Are These Benefits Worth?

Because the trial court held that Charles's premiums did not constitute an asset, it understandably did not reach the question of valuation. Valuation is the more difficult aspect of this case.

We have not previously addressed the possible methods of valuing health insurance benefits in a marriage dissolution. We begin by noting that a trial court has broad discretion to value an asset based on the evidence. Quillen, 671 N.E.2d at 102 (citing Cleary, 582 N.E.2d at

852). Appellate courts review such valuations for an abuse of discretion. Id. So long as sufficient evidence and reasonable inferences support the valuation, the trial court has not abused its discretion. Id. (citing Porter, 526 N.E.2d at 222).

The method a trial court uses to value health insurance benefits may vary case by case and may depend on the type of evidence the parties introduce. Three possible methods of valuing health insurance benefits seem plausible, though still other methods may be more appropriate in certain circumstances.[3]

For example, a trial court might value health insurance benefits by considering the cost of obtaining comparable alternative benefits. Presumably, this would involve discounting to present value the premiums a person would have to pay to obtain individual health insurance if he did not have the benefit of employer-provided health insurance. This method may be more likely to overstate the value of health insurance because of adverse selection and the tax-disfavored status of the individual health insurance market. It might also entail a higher cost in terms of expert witnesses.[4]

---

[3] The potential application of multiple methods of valuation exists in other settings. For instance, we have described somewhat similar methods of estimating the fair market value of property taken by eminent domain using

> (1) the current cost of reproducing the property less depreciation from all sources; (2) the "market data" approach or value indicated by recent sales or comparable properties in the market; and (3) the "income-approach," or the value which the property's net earning power will support based upon the capitalization of net income.

Bishop v. State, 800 N.E.2d 918, 923–24 (2003) (emphasis in original). We noted that any or all of these three methods were appropriate ways of valuing real estate. Id. at 924.

[4] We caution that we have not found a decision from a court that has used this method to value health insurance benefits, and at least one court has expressly disapproved of it. See, e.g., Hansen v. Hansen, 119 P.3d 1005, 1016 (Alaska 2005).

Second, a court might value health insurance benefits by considering the premium subsidy from the employer.[5] Presumably, this would involve discounting to present value all the premiums an employer had agreed to pay on behalf of a party while also taking into account the party's remaining life expectancy and the probability of the policy lapsing before the termination date. Anne effectively urged the trial court to adopt this discounted premium subsidy method when she submitted her Motion to Supplement the Record with her contentions of the asset's value. (App. at 39.)

Third, a trial court might value health insurance benefits by considering the cost of providing medical services covered by health insurance.[6] We anticipate that this would involve discounting to present value the expected costs of the medical services a health insurance plan would cover while also taking into account the party's remaining life expectancy and the probability of the policy lapsing before the termination date. Although this method may be necessary in certain circumstances, it also appears to be the most difficult to apply.

Regardless of how a trial court chooses to value health insurance benefits, the next question will always be how to divide the assets between the parties. There is a rebuttable presumption that an equal division of the marital property is just and reasonable. Ind. Code § 31-15-7-5. A party may rebut that presumption by introducing evidence that relates to "[t]he economic circumstances of each spouse at the time the disposition of the property is to become effective." Ind. Code § 31-15-7-5(3).

---

[5] Although academics and practitioners have argued over whether health insurance benefits should be included in marital property, they seem to assume that using a discounted premium subsidy method would be the appropriate method. Compare William R. Horbatt & Alan Grossman, Division of Retiree Health Benefits on Divorce:  The New Equitable Distribution Frontier, 28 Fam. L.Q. 327, 331–32 (1994) (arguing in favor of including health insurance benefits in marital property); with Jerry Reiss & Michael R. Walsh, Post-Retirement Medical Benefits:  A Not-So-Certain Property Right, 15 J. Amer. Acad. Matrimonial Lawyers 375, 386–87 (1998) (arguing against including health insurance benefits in marital property).

[6] We have not found a decision from a court that uses this method, and at least one court appears to have disapproved of it. See, e.g., Hansen, 119 P.3d at 1016.

If a party met this burden, then a trial court could deviate from an equal division to achieve a just and proper distribution. For instance, Charles has repeatedly argued that his health insurance benefits are illiquid and subject to risk. Although these factors cannot shield his health insurance benefits from their proper categorization as an asset, they may be sufficient grounds for the trial court to adjust the distribution of the marital property between the parties.

## Conclusion

We therefore reverse the trial court's division of property and remand for further proceedings on the valuation of Charles's benefits and reconsideration of the division of assets.

Sullivan, Boehm, and Rucker, JJ., concur.

Dickson, J. dissents with separate opinion.

10

**Dickson, Justice, dissenting.**

I dissent, believing that the Court's opinion expands the division of marital property contrary to statute, intrudes upon the legislature's public policy prerogatives, and significantly and harmfully disrupts Indiana marriage dissolution law and practice.

Today's revision of the present understanding of divisible property to now include vested future entitlements to health insurance benefits is predicated upon Indiana Code § 31-9-2-98(b), which designates the property subject to division in a marriage dissolution as follows:

> (b) "Property" . . . means all the assets of either party or both parties, including:
> (1) a present right to withdraw pension or retirement benefits;
> (2) *the right to receive pension or retirement benefits that are not forfeited upon termination of employment or that are vested (as defined in Section 411 of the Internal Revenue Code) but that are payable after the dissolution of marriage*; and
> (3) the right to receive disposable retired or retainer pay (as defined in 10 U.S.C. 1408(a)) acquired during the marriage that is or may be payable after the dissolution of marriage.

*Id.* (emphasis added). As to the entitlement to receive future retirement health insurance benefits, which falls within only subsection (b)(2) above, the legislature has designated the vested rights defined in Section 411 of the Internal Revenue Code.

Section 411, however, includes an important express limitation. It states that "normal retirement benefit[s]" are to be "determined without regard to – (A) medical benefits, and (B) disability benefits not in excess of the qualified disability benefit." 26 U.S.C. § 411(a)(9). By specifically referencing Section 411, the legislature has thus indicated its intent to exclude medical benefits from marital property subject to division.

Today's decision, in my view, represents a substantial departure not only from legislative direction and intent but also from the common practice and understanding relating to the division of vested future interests in dissolution cases. One extremely troubling application of today's

1

ruling is its impact in dissolution cases involving Hoosiers with retirement medical benefits from their United States military service. Active duty military members receive exceptional benefits for their years of service upon retirement. One of those benefits includes lifetime health insurance care through the TriCare system.[7] The military member's benefit can vest at the age of thirty-eight and continue for the rest of the retiree's life. This benefit extends to the military retiree's dependants, which includes the spouse of the retiree.[8] In the event of a marriage dissolution, however, the non-military spouse will almost always lose this benefit.[9] Under today's holding, the military retiree's health benefits would be considered divisible marital property and often warrant a sizeable valuation because of the potentially lengthy time the military retiree would be eligible for the lifetime benefit. The resulting inclusion of its present value as marital property would likely preclude a divorcing military retiree from retaining any other marital property and require post-dissolution periodic property settlement payments to the non-military former spouse. I seriously doubt that our legislature intended such potentially catastrophic results.

Today's holding also introduces other substantial challenges to the valuation and equitable distribution of marital property as parties and courts attempt to apply this new standard to the wide variety of non-pension, assured future benefit packages that are becoming more commonplace with many employers. For example, Hewlett-Packard (HP) provides discounts to its retirees, allowing them to purchase HP products ranging from laptops to printer ink cartridges at a reduced price.[10] The airline industry is known for its retirement benefits that can include

---

[7] TriCare, http://tricare.mil/mybenefit/home/overview/Eligibility? (last visited Sept. 15, 2010).
[8] Id.
[9] TriCare, http://tricare.mil/mybenefit/home/overview/Eligibility/Loss? (last visited Sept. 15, 2010). The former spouse may retain this benefit as long as: (a) he or she does not remarry, (b) he or she was married to the same military retiree for at least twenty years, (c) the military retiree has at least twenty years of creditable service towards determining retirement pay, and (d) the marriage and creditable service substantially overlap. *Id.*
[10] HP Retirees: Employee Purchase Program, http://www.hp.com/retiree/epp.html (last visited Sept. 15, 2010).

free flights for its employees and retirees, giving them the value of flying to any destination worldwide that is serviced by the airline. Some automobile manufacturers also have a benefit package for their employees and retirees. General Motors (GM) and Ford Motor Company both provide their employees discounts on periodic vehicle purchases.[11] Furthermore, many companies, such as Verizon have teamed up with other companies to offer non-monetary benefits to their retirees.[12] Some of these benefits include discounts at Barnes & Noble, Dell Computers, 1-800-Flowers, National Car Rental, and Sears Commercial.[13] All of these benefits have potential but speculative value to the beneficiary and provide no direct monetary compensation to the designated beneficiary. Assigning a present value to such vested benefits will be a formidable if not impossible task.

Believing that today's decision is contrary to statute, intrudes upon legislative policy-making, and harmfully disrupts existing dissolution property division law, I dissent.

---

[11] *See* GM Family First, https://www.gmfamilyfirst.com/ip-gmemployee/; Ford Motor Company, http://www.ford.com/about-ford/careers/careers-benefits (last visited Sept. 15, 2010).
[12] *See* Verizon, http://www22.verizon.com/content/retiree/your+discounts/other+discounts/other+discounts.htm (last visited Sept. 15, 2010).
[13] Id.