## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 23 2019, 5:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher M. Forrest
Forrest Legal, LLC
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Timothy M. Pape
Jamie C. Slotsema
Carson, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael Mansfield,

*Appellant-Respondent,*

v.

Micah Mansfield,

*Appellee-Petitioner.*

December 23, 2019

Court of Appeals Case No.
18A-DR-2983

Appeal from the Allen Superior Court

The Honorable Charles F. Pratt, Judge

The Honorable Lori K. Morgan, Magistrate

Trial Court Cause No.
02D07-1511-DR-1411

**Mathias, Judge.**

Michael Mansfield's ("Husband") and Micah Mansfield's ("Wife") marriage was dissolved in Allen Superior Court. Husband appeals the trial court's dissolution decree and raises four issues, which we restate as:

I. Whether the trial court abused its discretion when it awarded Wife primary physical custody of the parties' two children;

II. Whether the trial court abused its discretion when it ordered Husband's child support calculation retroactive to October 17, 2017;

III. Whether the trial court abused its discretion in valuing Husband's interest in L. Mansfield & Heirs, LLC; and,

IV. Whether the trial court abused its discretion when it included Husband's January 2016 employment bonus in the marital estate.

We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## Facts and Procedural History

The parties were married on August 4, 2007. They have two children: J.M., born in 2010, and E.M., born in 2011. Wife was a nurse, and Husband is employed in the information technology field. Husband often worked significant hours during the marriage, and Wife was the primary caregiver for the children. After the children were born, Wife stayed at home with the children for a period of time. When she returned to work, she worked part-time.

Wife filed a petition for dissolution of marriage on November 16, 2015. Initially, the parties agreed to a "bird's nest" arrangement where the children remained in the marital residence at all times. The parties exercised their

parenting time and overnights with the children at the marital residence. Wife was hopeful that the "bird's nest" arrangement would help the children transition and adjust to the parties' separation. Under the parties' agreed parenting time schedule, in every two-week period, Wife exercised 8 of the 14 overnights with the children.

[4] In August 2016, Wife decided that the "bird's nest" arrangement was confusing the children because it gave the children the impression that the parties were still living together. She believed that maintaining her own residence would help the children understand that the parties were in the process of dissolving the marriage. Therefore, Wife obtained her own residence and exercised parenting time with the children in her new home. Shortly thereafter, the children began to experience separation anxiety when they would leave Wife's home to go to Husband's home for his overnights. E.M.'s separation anxiety was particularly severe. J.M. began acting out at school.

[5] The children began to participate in counseling to help them deal with their anxiety. The parties were receptive to the counselor's suggestions and tried to incorporate them into their parenting routines. However, Husband would not agree to testing that the counselor recommended for J.M. due to the behaviors that J.M. exhibited at school.

[6] On October 17, 2017, the trial court granted the parties' joint stipulation to dissolve their marriage but bifurcated the child custody determination and

division of the marital estate. Thereafter, final hearings were held in this case on September 22 and 28, 2017, January 22, 2018, and April 23, 2018.

[7] Child custody and the parenting time schedule were significant sources of conflict between the parties at the hearing. The trial court found

> the testimony credible that the children are experiencing anxiety related to the current parenting time schedule especially given a consideration of their young ages, the instability in their living arrangements, the frequency of the parenting time exchanges as well as the confusion that sometimes occurs during parenting time exchanges. [Wife] has functioned in the role of the children's primary caregiver during the marriage and the children have developed a strong bond and attachment with her. The Court finds that the entry of an order modifying the current parenting time schedule to provide the children with more stability in their home environment is in the children's best interests. The Court further finds that the entry of an order awarding [Wife] primary physical custody of the minor children is in the minor children's best interests.

Appellant's App. p. 49.

[8] Husband was awarded parenting time as set forth in the Indiana Parenting Time Guidelines, except Husband was awarded a mid-week overnight on Wednesdays. Husband, who did not pay child support during the dissolution proceedings, was ordered to pay $141 per week in child support, and child support was ordered to be paid retroactive from October 17, 2017, the date the marriage was dissolved.

[9] With regard to the parties' marital assets, the parties presented significantly different valuations for Mansfield & Heirs, LLC. The assets held by the company consist of a remainder interest in four tracts of farmland in Ohio previously owned by Husband's grandfather, Gilbert Schick. The trial court found that

> . . . Subsequently, the [Wife] and [Husband] created a Limited Liability Corporation called L. Mansfield & Heirs, LLC (the "LLC") and transferred their interest in the real estate to be held by the LLC. [Husband's] sister transferred her one-half Remainder Interest in the land into the LLC as well. The LLC's Remainder Interest in one of the four underlying tracts of land is subject to a life estate vested in [Husband's] uncle. The other three tracts of land are subject to a life estate vested in [Husband's] mother, Lesa Mansfield. The real estate is subject to [Husband's] uncle's ability to farm the land for life. [Husband] and his sister each own a 50% membership interest in the LLC and [Husband's] mother serves as the manager of the LLC. She may only be removed as the manager by a majority of the members. The Remainder Interest is the sole asset of the LLC . . .

> ***

> In connection with the transfer of the Remainder Interest to the LLC, during the marriage, [Wife] was asked to, and ultimately did, execute Quit Claim Deeds quit-claiming and relinquishing any right, title, or interest to the underlying real estate. [Husband] then retained a 50% ownership interest in the LLC. According to [Husband's] testimony at trial, during the marriage, the parties did not receive a financial benefit as a result of the Remainder Interest or the LLC, nor did they make plans or decisions during the marriage based upon the expectation of realizing such interest. He advises that he and [Wife] did not discuss the

Remainder Interest of LLC much during the marriage and that he only recently began to understand the kind of interest that he holds. He contends that [Wife] had knowledge of all of the communications that occurred during the marriage regarding the Remainder Interest and the LLC. He further advised at trial that he had always believed that the Remainder Interest and/or interest in the LLC was a future inheritance that he would receive upon the death of several family members and did not understand until recently, that he held a present right to the Remainder Interest and/or LLC. He testified that at trial that he was still attempting to understand the exact nature of the interest that he and/or the LLC holds.

*Id*. at 52, 54–55.

[10] Each party hired experts to value the remainder interest held by the LLC. Wife's expert concluded that Husband's 50% interest in the LLC was worth $252,800.00. Husband's expert determined that Husband's 50% ownership interest in the LLC was worth $38,000.00. The trial court adopted the value calculated by Wife's experts after concluding that they were reliable and their opinions were "based upon sound valuation principles." *Id*. at 58.

[11] The parties also could not agree whether a bonus Husband received from his employer in January 2016 was a marital asset. The trial court also concluded that it was and included it in the marital estate because the bonus was for work performed in the 2015 calendar year.

[12] Husband now appeals the trial court's November 16, 2018 order addressing custody and parenting time of the parties' children and dividing the marital estate. Additional facts will be provided as necessary.

# Standard of Review

[13] Husband requested findings of fact and conclusions of law. Therefore, first we determine whether the evidence supports the trial court's findings, and second we determine whether the findings support the judgment. *Lechien v. Wren*, 950 N.E.2d 838, 841 (Ind. Ct. App. 2011). We will set aside the trial court's specific findings only if they are clearly erroneous, that is, when there are no facts or inferences drawn therefrom to support them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We neither reweigh the evidence nor assess the credibility of witnesses but consider only the evidence most favorable to the judgment. *Id.* The findings control only as to the issues they cover, and a general judgment standard applies to issues upon which the trial court made no findings. *Id.*

## I. Custody and Parenting Time

[14] Husband argues that the trial court abused its discretion when it awarded Wife primary physical custody of the children and awarded him "minimum" parenting time. *See* Appellant's Br. at 24. Our standard of review of initial child custody determinations is well settled. Child custody decisions fall within the trial court's sound discretion. *Swadner v. Swadner*, 897 N.E.2d 966, 973 (Ind. Ct. App. 2008).

[15] In an initial custody determination, both parents are presumed equally entitled to custody. *Hamilton v. Hamilton*, 103 N.E.3d 690, 694 (Ind. Ct. App. 2018),

*trans. denied.* The trial court shall determine custody and enter a custody order in accordance with the best interests of the child by considering all relevant factors, including:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

> (A) the child's parent or parents;

> (B) the child's sibling; and

> (C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

> (A) home;

> (B) school; and

> (C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

Ind. Code § 31-17-2-8.

[16]     In deference to the trial court's proximity to the issues, we do not reweigh the evidence or determine the credibility of witnesses. *Hughes v. Rogusta*, 830 N.E.2d 898, 902 (Ind. Ct. App. 2005). Instead, we consider the evidence most favorable to the judgment, with all reasonable inferences drawn in favor of the judgment. *Id.* We will affirm the trial court's custody determination absent an abuse of discretion. *Swadner*, 897 N.E.2d at 973.

[17]     Husband argues that he was exercising near equal parenting time, with Wife's agreement, during the dissolution proceedings. Therefore, he argues that the trial court should have treated the custody and parenting time issues as modifications of custody and parenting time and should have applied the more stringent modification standard.[1]

[18]     Throughout these proceedings, Husband was on notice that the trial court would make an initial custody determination when issuing its decree, and the parties' provisional agreement was temporary. Moreover, during the pendency of the dissolution proceedings, Wife expressed her belief to Husband that their provisional custody and parenting time arrangement was causing the children

---

[1] A party who seeks modification of custody must prove modification is in the child's best interests and a substantial change in one or more of the statutory factors enumerated in Indiana Code section 31-17-2-8. In support of his argument that the modification standard should apply, Father relies on *In re Paternity of Winkler*, 725 N.E.2d 124, 127–28 (Ind. Ct. App. 2000). But in that case, Mother had sole legal custody of the child for twelve years, and Father "acquiesced to the custody arrangement for this long period of time." *Id.* at 128. Therefore, "the same concerns about stability and continuity present in sole and joint custody modifications are present." *Id.* Moreover the paternity statute effectively provides that the child's mother will have sole custody of a child born out-of-wedlock. *Id.* at 127. Although the dissolution proceedings in this case pended for nearly three years, the circumstances present in this appeal are not legally or factually analogous to those in *Winkler*.

to suffer from anxiety, and she sought to change the arrangement. But Husband would not agree to any changes. For these reasons, Husband has not persuaded us that the trial court was required to consider its custody and parenting time decisions under the more stringent modification standard.

[19] Wife was the children's primary caretaker throughout the marriage. After the children were born, when she returned to work, Wife worked part-time until June 2015. Wife adjusted her work schedule to take care of the children's needs. Husband would often work overtime and assist at his family's business. However, during the parties' separation, Husband cared for the children six out of every fourteen overnights. Husband substantially relies on this fact to support his argument that the trial court should have awarded joint physical custody.

[20] But the children began to suffer anxiety during the parties' provisional custody arrangement, and J.M. began acting out at school. Husband's challenge to the trial court's finding that the children suffered anxiety throughout the parties' separation is simply a request to reweigh the evidence and the credibility of the witnesses. With Husband's agreement and support, the children were in counseling to deal with their anxiety. The parties have implemented strategies suggested by the children's counselor, and the children's anxiety has lessened over their two years of counseling. But the children's issues with anxiety still persist. And Husband refused to consider changing the parties' parenting time schedule even though the children struggled to adjust to the multiple parenting exchanges each week.

[21]     This evidence supports the trial court's award of primary physical custody to Wife. The trial court considered the statutory factors and determined that the children need more stability and less parenting time exchanges. The court also considered that the children have a stronger bond and attachment to Wife. Finally, the evidence supports the trial court's determination that awarding Wife primary physical custody is in the children's best interests.

[22]     Husband also argues that the trial court abused its discretion by awarding him minimal parenting time. In all parenting time controversies, courts must give foremost consideration to the best interests of the child. *Hazelett v. Hazelett*, 119 N.E.3d 153, 161 (Ind. Ct. App. 2019). We review a trial court's parenting time determination under an abuse of discretion standard. *Id.* If the record reveals a rational basis supporting the trial court's decision, no abuse of discretion occurred. *Id.* In reviewing a trial court's determination, we will not reweigh the evidence or judge the credibility of the witnesses. *Id.*

[23]     The trial court awarded Husband parenting time consistent with the guidelines, but in addition, awarded Husband a mid-week overnight. Husband was awarded more than minimal parenting time. The trial court's parenting time decision took into account the children's ages, their need for more stability and fewer exchanges between the parents, but also the fact that Husband has had significant parenting time with the children throughout the dissolution proceedings. For these reasons, we conclude that the trial court acted within its discretion when it entered its parenting time order.

## II. Child Support Calculation and Retroactivity

[24] Husband argues that the trial court abused its discretion when it ordered his child support obligation retroactive to October 17, 2017. There was no child support order in place during the dissolution proceedings.

[25] A trial court's calculation of child support is presumptively valid. *Young v. Young*, 891 N.E.2d 1045, 1047 (Ind. 2008). We will reverse a trial court's decision in child support matters only if it is clearly erroneous or contrary to law. *Id.* A decision is clearly erroneous if it is clearly against the logic and effect of the facts and circumstances that were before the trial court. *Id.*

[26] It is well settled that an initial child support order can be retroactive to the date of the petition for dissolution. *Mitten v. Mitten*, 44 N.E.3d 695, 705 (Ind. Ct. App. 2015) (citing *Boone v. Boone*, 924 N.E.2d 649, 652 (Ind. Ct. App. 2010)). The trial court chose October 17, 2017 for the effective start date of the child support order because that is the date the court granted the parties' joint stipulation to dissolve their marriage. It was well within the trial court's discretion to do so.

[27] Husband argues that "even if the support obligation is retroactive to October 17, 2017, Husband should have been provided an appropriate parenting time credit from October 17, 2017 to November 16, 2018" because during those dates, he was exercising more overnight visitation than provided for in the decree. Appellant's Br. at 31.

[28]   In its child support calculation, the trial court gave Husband credit for 150 overnights per year. The evidence presented at the hearing established that Husband was exercising 6 overnights with the children in every two-week period while the dissolution was pending. Therefore, from October 17, 2017 to November 16, 2018 (the date of the dissolution decree), Husband exercised approximately 156 overnights annually with the children. Husband has not provided us with a calculation of his child support obligation giving him credit for 156 overnights as opposed to 150 overnights. After reviewing the child support obligation worksheet, we conclude that giving Husband credit for 156 annual overnights will result in a change in the calculation of his weekly, retroactive child support obligation to the amount of $134 per week, or an aggregate difference of $395. For this reason, we remand this case to the trial court to recalculate Husband's weekly retroactive child support obligation accordingly.

### III.   The Value of L. Mansfield & Heirs, LLC

[29]   Next, Husband argues that the value the trial court assigned to L. Mansfield & Heirs, LLC ("LLC") is not supported by the evidence. A trial court's decision in assigning a value to property in a dissolution action is reviewed for an abuse of discretion. *Del Priore v. Del Priore*, 65 N.E.3d 1065, 1076 (Ind. Ct. App. 2016), *trans. denied*. Generally, there is no abuse of discretion if a trial court's chosen valuation is within the range of values supported by the evidence. *Id.* "A valuation submitted by one of the parties is competent evidence of the value of property in a dissolution action and may alone support the trial court's

determination in that regard." *Id.* (citing *Alexander v. Alexander*, 927 N.E.2d 926, 935 (Ind. Ct. App. 2010), *trans. denied*). On appeal, "we resist the temptation to get deeply involved in analyzing the valuation evidence presented at trial." *Quillen v. Quillen*, 671 N.E.2d 98, 100 (Ind. 1996). Finally, when we review a trial court's valuation of property in a dissolution, we will neither reweigh the evidence nor judge the credibility of witnesses. *Del Priore*, 65 N.E.3d at 1076–77.

[30] The LLC's assets consist solely of remainder interests in the four parcels of Ohio farmland that are subject to Husband's uncle's right to farm the land, and the life estates granted to his uncle or his mother, depending on the parcel. Both parties had the farmland appraised, and then each hired a certified public accountant to value the interest owned by the LLC. Each expert testified at trial and explained their respective methodologies for calculating the remainder interest held by the LLC. Wife's expert concluded that Husband's 50% ownership interest in the LLC was worth $252,800, and Husband's expert concluded that it was worth $38,000.[2]

[31] The trial court found both Husband's and Wife's experts' testimonies and evidence "to be credible regarding the value of the land and the value of [Husband's] 50% ownership interest in the LLC[.]" Appellant's App. p. 58. But the trial court specifically found that the testimony of Wife's experts was

---

[2] The appraisers concluded that the four parcels of land were collectively worth between $1,187,000 and $1,311,000.

"reliable and based on sound valuation principles." *Id.* Therefore, the trial court found that Husband's interest in the LLC was worth $252,800. The trial court acted within its discretion when it determined that Wife's expert's methodology of calculating Husband's 50% interest in the LLC was reliable.

[32]   However, the most significant difference between the two experts' opinions was whether the LLC owns a 100% remainder interest in the four parcels of farmland or a 50% remainder interest, subject to the life estates of Robert Schick and Lesa Mansfield. The trial court's conclusion in finding number 31 that Husband's grandfather transferred a remainder interest in one-half of the farmland to Husband and one-half to Husband's sister, who then both transferred their interests to the LLC, is not supported by the evidence.

[33]   The quit claim deeds for each transfer were admitted into evidence. The quit claim deed for parcel number 27-24S-010-00 states that "Ruth Ann Bair and Dana Bair, her husband; and Gloria Grimes and Eugene H. Grimes, her husband, for valuable consideration paid, grant to L. Mansfield & Heirs, LLC" the real estate described "subject to the life estate granted to Robert A. Schick[.]" Ex. Vol. 1, p. 108. Therefore, as to this parcel, the entire remainder interest was transferred to the LLC.

[34]   However, the quit claim deed for parcel number 27-24S-010-03 establishes that Husband and his sister transferred to L. Mansfield and Heirs, LLC, a "remainder interest in an undivided one-half" of the described real estate, subject to the life estate granted to Lesa Mansfield. *Id.* at 111. Finally, the quit

claim deed for parcel number 08-28S-001-00, which consists of two separate tracts of farmland, established that the several family members, including Husband and his sister, transferred to "Lesa Mansfield, for and during the term of her natural life, the remainder to L. Mansfield & Heirs, LLC. . . an undivided one-half interest" in the described real estate. *Id.* at 116.

[35] Therefore, on the face of the deeds, 100% of the remainder interest in parcel number 27-24S-010-00 was transferred to the LLC, but as to parcel numbers 27-24S-010-03 and 08-28S-001-00 only one-half of the remainder interest was transferred to the LLC. For this reason, neither of the experts appropriately calculated the value of the remainder interests owned by the LLC.[3]

[36] For all of these reasons, the trial court abused its discretion when it concluded that Husband's 50% interest in the LLC was worth $252,800. Therefore, we remand this case with instructions to recalculate the value of Husband's interest.

### IV. *Husband's January 2016 Bonus*

[37] Finally, Husband argues that the trial court abused its discretion when it included the bonus he received from his employer in January 2016, after the dissolution petition was filed, in the marital estate.

---

[3] Wife's expert calculated the value as if the LLC owned 100% of the remainder interest, and Husband's expert calculated the value as if the LLC owned only a 50% remainder interest in all four parcels.

The division of marital assets is within the trial court's discretion, and we will reverse only for an abuse of discretion. A party challenging the trial court's division of marital property must overcome a strong presumption that the trial court considered and complied with the applicable statute, and that presumption is one of the strongest presumptions applicable to our consideration on appeal. We may not reweigh the evidence or assess the credibility of the witnesses, and we will consider only the evidence most favorable to the trial court's disposition of the marital property.

*O'Connell v. O'Connell*, 889 N.E.2d 1, 10 (Ind. Ct. App. 2008) (citations and quotations omitted).

[38] All property, whether acquired before or during the marriage, is included in the marital estate for property division. *Webb v. Schleutker*, 891 N.E.2d 1144, 1149 (Ind. Ct. App. 2008). The marital pot usually closes on the date the dissolution petition is filed. *Sanjari v. Sanjari*, 755 N.E.2d 1186, 1192 (Ind. Ct. App. 2001).

[39] Wife argued and the trial court found that Husband received the bonus for work performed in 2015. "Indiana's 'one pot' theory prohibits the exclusion of any asset in which a party has a vested interest from the scope of the trial court's power to divide and award." *Falatovics v. Falatovics*, 15 N.E.3d 108, 110 (Ind. Ct. App. 2014). Whether a right to a present or future benefit constitutes an asset that should be included in the marital pot depends mainly on whether it has "vested" by the time of dissolution. *Ford v. Ford*, 953 N.E.2d 1137, 1142 (Ind. Ct. App. 2011). That is, "vesting is both a necessary and sufficient condition for a right to a benefit to constitute an asset." *Id.* (quoting *Bingley v.*

*Bingley*, 935 N.E.2d 152, 154 (Ind. 2010)). There are two ways in which a right to a benefit can vest: (1) vesting in possession or (2) vesting in interest. *Id.* Vesting in possession connotes an immediately existing right of present enjoyment, while vesting in interest implies a presently fixed right to future enjoyment. *Id.*; *see also In re Marriage of Preston*, 704 N.E.2d 1093, 1097 (Ind. Ct. App. 1999)).

[40] The only testimony on this issue came from Husband, who testified that annual employment bonuses he receives are based on the profitability of the company. Tr. Vol. 3, p. 43. He stated that if he had not been employed with the company in January 2016, he would not have received a bonus.

[41] Because Husband did not have a right to his bonus on November 16, 2015, the evidence leads to the conclusion that Husband's 2016 bonus had not vested on the date Wife filed her petition for dissolution. Wife did not present any contrary evidence. Accordingly, we conclude that the trial court should not have included Husband's January 2016 bonus in the marital estate.

# Conclusion

[42] Husband has not established any reversible error concerning the trial court's custody and parenting time. However, we remand this case to the trial court with instructions to recalculate Husband's retroactive child support obligation, as set forth in this opinion. In addition, the value the trial court assigned to the Mansfield, LLC is not supported by the evidence and Husband's January 2016 bonus should not have been included in the marital estate. We therefore

remand this case with instructions to recalculate the value of Husband's interest in Mansfield, LLC and to exclude his 2016 bonus from the marital estate.

[43] Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

May, J., and Brown, J., concur.